

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLOTTE R. KELLER,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

                              Defendant.

CASE NO.  10cv5305BHS

REPORT AND RECOMMENDATION

Noted for May 6, 2011

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed. (See ECF Nos. 17, 18, 21.)

After considering and reviewing the record, the undersigned finds that the ALJ did not evaluate properly the medical evidence or plaintiff's testimony. Therefore, the undersigned recommends that this case be REVERSED and REMANDED.

BACKGROUND

Plaintiff was born on April 15, 1955 (Tr. 51). She has experience working as a caregiver for a disabled woman (Tr. 602-03), as well as for developmentally disabled youths, until 1995 (Tr. 603). When her work as a caregiver became "difficult for [her] to deal with," (Tr. 603), she felt suicidal, stopped working, and her father began to support her (Tr. 605). Subsequently, in 1998, plaintiff tried to go back to work. However, "the anxiety [] was crippling [her]," and she "just couldn't do it" (Tr. 607).

Plaintiff testified at her September 1, 2004 hearing that "it's very hard to be motivated when there isn't really anything in life that I want" (Tr. 463). She also testified that "if I worked at home and I had very little contact with clients, just strictly about the business that we were doing, that I would – I could probably do it" (Tr. 451). However, due to her depression, and feeling like she doesn't "want to be alive," she has "a very hard time motivating [her]self to do stuff" (Tr. 462).

PROCEDURAL HISTORY

On November 25, 2002, plaintiff filed an application for Social Security Disability benefits (Tr. 51-53, 483), alleging a disability onset date of April 15, 1996 (Tr. 51). Her application was denied on October 8, 2004 by Administrative Law Judge Ralph Jones (hereinafter "ALJ Jones") (Tr. 12-22), after a September 1, 2004 hearing (see Tr. 433-73). Plaintiff filed a new application for Social Security Income in November, 2005, and also appealed the October 8, 2004 decision by ALJ Jones.

Plaintiff's appeal of the October 8, 2004 decision by ALJ Jones was successful, and this matter was remanded by the district court on April 10, 2006 (see Tr. 483). Administrative Law Judge Dan P. Hyatt (hereinafter "ALJ Hyatt" or "the ALJ") held a remand hearing on May 17,

2007 (see Tr. 595-615) and issued an unfavorable decision on July 9, 2007 (see Tr. 483-94).

Again, plaintiff appealed.

On December 3, 2008, this matter was remanded for a second time, this time by the Ninth

Circuit (Tr. 638; see also Tr. 634-36). Also, in the meantime, plaintiff was successful in her

subsequent application for Social Security Income on the basis of personality disorder and

anxiety disorder, with an onset date of November, 2005 (Tr. 483, 773-74).

On May 26, 2009, after this matter was remanded by the Ninth Circuit, the Appeals

Council issued an order remanding the case to the ALJ for a hearing (Tr. 641-44). On November

20, 2009, ALJ Hyatt presided over Plaintiff's hearing (Tr. 771-88). On December 30, 2009, he

issued a written decision finding plaintiff "not under a disability" from the April 15, 1996 alleged

onset date, through December 31, 2001, the date last insured (Tr. 632). Plaintiff appealed this

decision by filing a complaint in the district court. The December 30, 2009 written decision by

ALJ Hyatt is the final decision of the Commissioner subject to judicial review regarding

plaintiff's alleged disability from the April 15, 1996 alleged onset date, through December 31,

2001. See 20 C.F.R. § 404.984(d).

Plaintiff contends that the ALJ erred by failing to consider properly all of plaintiff's

severe impairments and failing to consider properly all of plaintiff's functional limitations. (See

Plaintiff's Opening Brief, ECF No. 17, p. 3.) She also contends that the ALJ erred by failing to

find her disabled at step three of the sequential disability evaluation. (See id.) In the alternative,

plaintiff contends that the ALJ should have found plaintiff disabled at step five. (See id.) Among

other contentions, plaintiff provides eight specific arguments regarding this matter.

1. The ALJ failed to evaluate properly the medical evidence. (See id., at pp. 4-12.)

2. The ALJ failed to give appropriate weight to the opinions of plaintiff's vocational counselor. (See id., at pp. 12-13.)

3. The ALJ failed to consider properly plaintiff's testimony regarding her symptoms and limitations. (See id., at pp. 13-18.)

4. The ALJ erred by failing to consider properly all of plaintiff's severe impairments and failing to consider properly all of plaintiff's functional limitations. (See id., at pp. 3-4.)

5. The ALJ failed to consider properly whether or not plaintiff met or equaled the B and C criteria in Listings 12.04 and/or 12.06 and/or 12.08. (See id., at pp. 18-19.)

6. The ALJ improperly determined plaintiff's residual functional capacity. (See id., at pp. 19-21.)

7. The Commissioner erroneously found plaintiff capable of performing her past relevant work. (See id., at p. 21.)

8. This case should be remanded for an award of benefits. (See id., at pp. 22-24.)

<u>STANDARD OF REVIEW</u>

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national

economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quoting Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971).

<u>DISCUSSION</u>

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) ("the ALJ erred in failing to meet, either explicitly or implicitly, the standard of clear and convincing reasons required to reject an uncontradicted opinion of an examining psychologist") (citing Lester, supra, 81 F.3d at 830). Even if a treating or examining psychologist's or physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Lester, supra, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citing Embrey v. Bowen, 849 F.2d

418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented."

Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).

The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting*

Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

    1.  The ALJ failed to evaluate properly the medical evidence provided by Dr. Robert E.
         Schneider, Ph.D., examining psychologist, June 3, 2002

Dr. Robert E. Schneider, Ph.D. (hereinafter "Dr. Schneider"), examined plaintiff on June

3, 2002 (see Tr. 154-164). He conducted many objective tests including the "Wechsler Adult

Intelligence Scale-Revised (WAIS – R), Wide Range Achievement Test-Revised, Peabody

Individual Achievement Test-Reading Comprehension Subtest, Rey Auditory Verbal Learning

Test, and Minnesota Multiphasic Personality Inventory-2 (MMPI-2)" (Tr. 154-55). In his report,

Dr. Schneider discussed plaintiff's background and subjective reports of her condition (Tr. 155-

58). Dr. Schneider also noted plaintiff's clinical presentation, and assessed that "[d]epression has

become [plaintiff's] identity" (Tr. 158). Dr. Schneider conducted a mental status evaluation

based on his objective observations, and noted that while plaintiff had a "depressive

presentation," she did not exhibit "psychomotor retardation nor any interference in cognitive or

intellectual functions [that are] attributable to her depression" (id.).

In his report, Dr. Schneider then conducts a thorough discussion of plaintiff's test results

and their implications (Tr. 158-61). He noted that some of plaintiff's results on some tests that

are sensitive to the effects of depression resulted in little or no abnormal results (e.g., "no

interference with concentration or attention," and "[s]he also performed well on the other tests

that are sensitive to problems with concentration and attention and are typically related to

depression and anxiety") (Tr. 159). Regarding plaintiff's insight into her abilities, Dr. Schneider

1    noted that "she did score within the high average range, but she did not score in the superior

2    range that she implied and that she believes" (id.). He also noted that "it appears that she could

3    perform basic assembly and production work if she were interested" (Tr. 160). Dr. Schneider

4    also noted that plaintiff "presents as being hypersensitive to other people's behavior" (id.).

5            Dr. Schneider also evaluated plaintiff's test results from the Minnesota Multiphasic

6    Personality Inventory-2 (the MMPI-2) (Tr. 161). In contrast with the findings on her cognitive

7    tests, the profile resulting from the MMPI-2 was "consistent with self-report," and "indicates

8    chronic depression, anxiety and diminished psychological energy in an individual with a passive

9    aggressive and passive dependent personality disorder" (id.). Dr. Schneider noted that "[t]his

10   particular profile is one of the most frequent profile types seen among psychiatric patients and it

11   is rarely found among normal [individual]s" (id.). He also noted that the psychopathology

12   indicated by plaintiff's test results "typically involved multiple neurotic manifestations and it is

13   typically chronic and long standing" (id.). At the end of his report, Dr. Schneider concluded that

14   plaintiff's MMPI-2 profile "is consistent with her descriptions of her functioning" (Tr. 163). Dr.

15   Schneider also concluded that "[i]ndividuals with similar [MMPI-2] profiles typically exhibit

16   many of the same characteristics that [plaintiff] describes including chronic distress, chronic

17   rumination, social isolation and withdrawal and poor emotional coping skills" (Tr. 163).

18           Dr. Schneider included approximately three pages of summary and conclusions (Tr. 161-

19   64). He concluded that plaintiff "presented with an extreme disability identity. She is convinced

20   that she cannot work outside of her house and cannot work with other people" (Tr. 162). Dr.

21   Schneider noted that "individuals with similar profiles are not good candidates for introspective

22   psychological treatment, but they benefit from supportive, directive and goal oriented treatment

23   that emphasizes real life accomplishments" (Tr. 163). He also opined that such treatment "would

REPORT AND RECOMMENDATION - 7

be an excellent match for [plaintiff's] current situation in which real life accomplishments will be essential to her returning to the work force" (id.).

Dr. Schneider concluded that plaintiff's "character disorder is quite significant and is likely to be the most significant barrier to vocational planning and vocational success" (Tr. 163). Dr. Schneider opines further that plaintiff's character disorder manifests as a belief by plaintiff that she cannot work (id.). According to Dr. Schneider, plaintiff "is so convinced that she cannot work outside of the house that it seems virtually impossible that she would even attempt to work outside of the house" (id.). Therefore, Dr. Schneider concludes that "it may be necessary to identify some activity that she can perform at home" (id.). Dr. Schneider diagnosed plaintiff with major depression, chronic; generalized anxiety disorder; mixed personality disorder with passive aggressive, passive dependent and schizoid features," among other diagnoses (Tr. 164).

Although the ALJ does not specify what weight he gave to the opinion by Dr. Schneider, the ALJ concluded that "Dr. Schneider's opinions  . . . .  cannot be afforded significant weight" (Tr. 628). The ALJ discounted Dr. Schneider's opinion, in part, because the ALJ concluded that "Dr. Schneider apparently relied quite heavily on [plaintiff]'s subjective report of symptoms and limitations in formulating an opinion that appears to rest in significant part on an assessment of physical limitations clearly outside his area of expertise" (id.).

Regarding reliance on plaintiff's subjective reports, as noted above, Dr. Schneider conducted many psychological and cognitive tests, including the "Wechsler Adult Intelligence Scale-Revised (WAIS – R), Wide Range Achievement Test-Revised, Peabody Individual Achievement Test-Reading Comprehension Subtest, Rey Auditory Verbal Learning Test, and Minnesota Multiphasic Personality Inventory-2 (MMPI-2)" (see supra p. 6; see also Tr. 154-55). Dr. Schneider provided an extensive analysis of these objective tests (see supra pp. 6-7; Tr. 158-

1   161). Based on these facts, and on a review of the relevant record, the ALJ's conclusion that "Dr.

2   Schneider apparently relied quite heavily on [plaintiff]'s subjective report of symptoms and

3   limitations in formulating an opinion," is not an accurate assessment, and is a finding without

4   substantial evidence in the record (see Tr. 628).

5        In addition, the Court concludes that a review of Dr. Schneider's report reveals that Dr.

6   Schneider appears to have based his opinion on his assessment of plaintiff's subjective reports,

7   his objective observations and the results of plaintiff's psychological and cognitive test results.

8   There is only a small amount of discussion of physical limitations in Dr. Schneider's report and

9   his conclusions contain almost no references to plaintiff's physical complaints (see Tr. 161-64).

10  Therefore, the ALJ's conclusion that Dr. Schneider's opinion "appears to rest in significant part

11  on an assessment of physical limitations clearly outside his area of expertise" does not have

12  substantial support in the record (id.).

13        Likewise, the ALJ discounted Dr. Schneider's opinion in part because "he ignored the

14  objective evidence from his own testing," citing evidence of plaintiff's cognitive abilities (Tr.

15  628). The Court has noted multiple times within Dr. Schneider's report that Dr. Schneider noted

16  that plaintiff demonstrated normal abilities on cognitive tests and on objective tests that often are

17  sensitive to depression and anxiety (e.g., "[s]he also performed well on the other tests that are

18  sensitive to problems with concentration and attention and are typically related to depression and

19  anxiety") (Tr. 159; see supra pp. 6-7). There is no evidence that Dr. Schneider "ignored" any of

20  this objective evidence, and there is much evidence in his report demonstrating that he

21  considered it repeatedly (see Tr. 159, 160, 162, 163).

22        In the context of evaluating the medical opinion by Dr. Schneider, the ALJ also made his

23  own conclusion as to the meaning of the medical evidence in Dr. Schneider's report: "the

REPORT AND RECOMMENDATION - 9

1   objective evidence from [Dr. Schneider's] testing [] reflected that [plaintiff] was psychologically

2   capable of performing the basic demands of competitive, remunerative, skilled work on a

3   sustained basis" (Tr. 628). However, Dr. Schneider reviewed this same objective evidence and

4   came to a contrary conclusion. Although Dr. Schneider noted that plaintiff's concentration ability

5   and ability to maintain attention demonstrated that plaintiff *cognitively* was capable of

6   performing the basic demands of work, he never concluded that this objective evidence

7   demonstrated that she *psychologically* was capable of performing the basic demands of work. In

8   fact, Dr. Schneider made what is almost the exact opposite conclusion: "[Plaintiff's] character

9   disorder is quite significant and is likely to be the most significant barrier to" plaintiff's

10   vocational success (Tr. 163). The ALJ must explain why his own interpretations, rather than

11   those of the doctors, are correct. Reddick, supra, 157 F.3d at 831. Here, the ALJ did not explain

12   adequately why his interpretation of the objective evidence in Dr. Schneider's report is correct

13   over the interpretation of the same objective evidence by Dr. Schneider.

14

15

16          Finally, based on a review of Dr. Schneider's report, and based on the reasons already

17   discussed, the Court concludes that the ALJ's finding that Dr. Schneider "seemed to uncritically

18   accept as true, most, if not all, of what [plaintiff] reported despite his own observations

19   concerning how [plaintiff] exaggerated her physical and emotional disabilities" is not supported

20   by substantial evidence in the record.

21

22          Even if an examining psychologist's opinion is contradicted, that opinion "can only be

23   rejected for specific and legitimate reasons that are supported by substantial evidence in the

24   record." Lester, supra, 81 F.3d at 830-31. Because the ALJ did not provide legitimate reasons

25   supported by substantial evidence in the record for his failure to give significant weight to the

26   opinion by Dr. Schneider, and because the ALJ did not explain why his interpretations over those

REPORT AND RECOMMENDATION - 10

1    of Dr. Schneider are correct, the Court concludes that the ALJ did not evaluate properly the

2    medical evidence supplied by Dr. Schneider.

3        2.   The ALJ improperly rejected the evidence provided by Ms. Susan Kelsey, M.S., C.R.C.,

4             Vocational Counselor.

5        Ms. Susan Kelsey, M.S., C.R.C., (hereinafter "Ms. Kelsey"), is a "Rehabilitation

6    Technician 2 for the State of Washington in the Division of Vocational Rehabilitation" (Tr. 573-

7

8    74). She "worked extensively with [plaintiff] to try and help her become employed" (id.). On

9    June 1, 2006, Ms. Kelsey wrote a letter to the ALJ, stating that the Division of Vocational

10   Rehabilitation "worked very hard to find suitable employment or a self employment business for

11   [plaintiff] without success due to the many disabilities that she has" (id.). Ms. Kelsey also

12   indicated her opinion that plaintiff "is creative with ideas, but has extreme difficulty executing

13   her ideas due to her inability to be able to work outside the home or interact with people" (id.).

14   The ALJ failed to mention this evidence by vocational counselor Ms. Kelsey. Ms. Kelsey

15   provided significant probative evidence regarding plaintiff's ability to work. According to the

16   Ninth Circuit Court of Appeals, when an ALJ rejects significant probative evidence, the ALJ

17   must explain why this "significant probative evidence has been rejected." Vincent on Behalf of

18   Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (quoting Cotter v.

19   Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

20       3.   The ALJ erred in assessing Plaintiff's Credibility.

21

22       If the medical evidence in the record is not conclusive, sole responsibility for resolving

23   conflicting testimony and questions of credibility lies with the ALJ.  Sample v. Schweiker, 694

24   F.2d 639, 642 (9th Cir. 1999) (quoting Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971)

25   (citing Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).  Nevertheless, the ALJ's

26

credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (*citing* Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Id. at 972 (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, 157 F.3d at 722 (citations omitted); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony, daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, *supra*, 80 F.3d at 1284.

The determination of whether to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84;

1  Reddick, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v.

2  Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

3         The ALJ conducted an extensive review of plaintiff's credibility (Tr. 625-628). Some of

4  this discussion is relevant and considered properly in the context of a claimant's credibility. See

5  Smolen, supra, 80 F.3d at 1284. For example, the ALJ noted that plaintiff "admitted that she

6  believed she could work if she chose to, as long as she did not have to be around other people"

7  (Tr. 450, 625), and also noted plaintiff's "admitted  . . . .  boredom' and 'lack of motivation,'

8  [as well as her belief] that she could work if she found a job that 'interested her'" (Tr. 451, 627;

9  see also Tr. 461, 462, 463). However, the ALJ also improperly relied on erroneous facts and

10  general, vague statements.

11         The ALJ included in his discussion regarding plaintiff's credibility that "a review of

12  [plaintiff]'s work history shows that she worked only sporadically for several years prior to the

13  alleged disability onset date" (Tr. 627). The ALJ concluded that this finding "raises a question as

14  to whether [plaintiff]'s continuing unemployment is actually due to medical impairment" (id.).

15  However, plaintiff's work history includes four quarters of earnings every year from 1978 until

16  1996 (Tr. 663). In the context of an application for disability, the fact that plaintiff worked four

17  quarters every year from 1978 until 1996 weighs in favor of a positive finding regarding

18  plaintiff's credibility. The ALJ's finding that plaintiff "worked only sporadically for several

19  years" prior to April 15, 1996, the alleged onset date, was relied on improperly by the ALJ in

20  making his credibility finding.

21         Regarding plaintiff's credibility, the ALJ also found that:

22
23         while [plaintiff] does have underlying medical conditions that could reasonably
           result in the symptoms she alleges if she failed to follow her medical regimen
24         or attempted to exceed her residual functional capacity as set forth above  . . .
           . her allegations as to the intensity, persistence and limiting effects of these

25

26

1
2

     symptoms are disproportionate and not sufficiently supported by the objective
     medical findings or any other corroborating evidence.

3
4
5
6
7
8
9
10
11
12
13
14

(Tr. 626). Based on a review of the record, the Court finds that the ALJ's assertion that plaintiff

only suffered the symptoms she alleges if she failed to follow her medical regimen or attempted

to exceed her residual functional capacity is not supported by substantial evidence in the record

as a whole. First, the Court notes that the ALJ does not cite any medical opinion to support this

conclusion. In addition, plaintiff's testimony demonstrates that she suffered the symptoms she

alleges even when she was not attempting to exceed the residual functional capacity the ALJ

concluded that she had. The ALJ subsequently adopted the opinion from the vocational expert

who testified at plaintiff's last hearing that plaintiff's residual functional capacity is such that she

is capable of her previous work as a home care attendant (Tr. 631-32). However, plaintiff alleges

that even working in the home as a caregiver was "difficult for [her] to deal with" and resulted in

suicidal feelings (Tr. 603).

15
16
17
18
19
20
21
22
23
24

     Similarly, regarding "objective medical findings or any other corroborating evidence,"

Dr. Schneider noted the objective medical finding that the profile for plaintiff resulting from the

objective results of her MMPI-2 test was "consistent with self-report" (Tr. 161). Dr. Schneider

also noted that "[t]his particular profile is one of the most frequent profile types seen among

psychiatric patients and it is rarely found among normal [individual]s" (id.). Therefore, based on

these facts, and on a review of the relevant record, the Court also concludes that the ALJ's

assertion that plaintiff's allegations "are disproportionate and not sufficiently supported by the

objective medical findings or any other corroborating evidence" is not supported by substantial

evidence in the record.

25
26

     Next, the ALJ concludes that plaintiff's treatment "was generally successful in

controlling [plaintiff's allegedly disabling] symptoms" (Tr. 626). The ALJ does not provide any

1   citation to a medical opinion or to any other source for this conclusion. When an ALJ bases a

2   credibility finding on the medical determination that an individual's treatment regimen is

3   successful in treating the individual's symptoms, "absent affirmative evidence that [plaintiff] is

4   malingering, the ALJ must provide 'clear and convincing' reasons for rejecting the claimant's

5   testimony. Smolen, supra, 80 F.3d at 1283-84. Based on a review of the record, the Court

6   concludes that the ALJ did not provide "clear and convincing' reasons" for rejecting this aspect

7   of plaintiff's testimony. See id.

8         The ALJ also concludes that because plaintiff "often failed to comply with the medical

9   regimen prescribed by her treating doctors  . . . . her symptoms may not have been as serious as

10  has been alleged" (Tr. 626). However, when a mental illness is involved, assuming that a failure

11  to comply with prescribed treatment suggests a *willful* failure to comply with prescribed

12  treatment can be illogical. This is in part because a person suffering from a mental illness may

13  not realize that she needs her medication, or she may not even realize that her "condition reflects

14  a potentially serious mental illness." Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.

15  1996). "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise

16  of poor judgment in seeking rehabilitation.'" Id. (*quoting* with approval, Blankenship v. Bowen,

17  874 F.2d 1116, 1124 (6th Cir. 1989)).

18        In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the

19  adjudicator must not draw any inferences about an individual's symptoms and their functional

20  effects from a failure to seek or pursue regular medical treatment without first considering any

21  explanations that the individual may provide, or other information in the case record, that may

22  explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7,

23  1996 SSR LEXIS 4, at *21-*22. Here, the ALJ includes the following in his decision:

> [Plaintiff] has also written that she was unable to seek treatment and/or obtain medication because of a lack of funds and/or health insurance coverage (internal citation to Exhibit 16E). In this case, one might expect to see records of visits to the emergency room or to the free or low-cost health clinics that exist in the area and of attempts to use one of the many programs to provide prescription medications to persons of limited means. To the extent [plaintiff] refused or failed to take advantage of these alternative treatment sources it is not unreasonable to suggest that her symptoms may not have been as serious [as] she has alleged.

(Tr. 627).

The ALJ does not specify which of "the many programs" or which of the "free or low-cost health clinics" the ALJ expected plaintiff to have utilized. In addition, the ALJ does not provide any citation to the record suggesting that plaintiff was aware of any such possibilities or that seeking treatment at one of these clinics or through one of these programs was a viable option for plaintiff. Nevertheless, the ALJ appears to suggest that plaintiff's symptoms are less serious than plaintiff alleges because otherwise, she would have sought treatment through one of the "many programs" or at the "free or low-cost health clinics" (Tr. 627).

As "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation,'" the Court concludes that the reasons given by the ALJ for his suggestion that plaintiff's symptoms "may not have been as serious [as] she has alleged" are not convincing. Van Nguyen, supra, 100 F.3d at 1465 (*quoting* with approval, Blankenship, 874 F.2d at 1124); see also Smolen, supra, 80 F.3d at 1283-84.

Finally, the ALJ indicated that three "factors weigh against considering [plaintiff's] allegations [regarding her limitations in daily activities] to be strong evidence in favor of finding [plaintiff] disabled" (Tr. 627). According to the ALJ,

> [f]irst, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if [plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [plaintiff's] medical condition, as opposed to other reasons, in view of the

REPORT AND RECOMMENDATION - 16

relatively weak medical evidence and other factors discussed in this decision. Finally, the record reflects that [plaintiff] has engaged in daily activities that are not limited to the extent on would expect, given the complaints of disabling symptoms and limitation.

(Tr. 627).

The first reason regarding daily activities given by the ALJ in support of her conclusion that "[plaintiff's] subjective complaints cannot be found sufficiently credible to serve as additive evidence to support a finding of disability" (Tr. 627-28) was that "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty" (Tr. 627). This is a statement of general fact that bears only a small amount of relevance to plaintiff's credibility in this specific case: simply because a fact cannot be verified objectively provides little evidence to support the conclusion that the individual is not being truthful about such fact in any particular instance.

The second reason given by the ALJ is that "it is difficult to attribute that degree of limitation to [plaintiff]'s medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (Id.) First, the Court notes that the ALJ does not specify what "other reasons" to which one can attribute the degree of limitation plaintiff alleges that she suffers. Attributing the degree of limitation plaintiff alleges to "other reasons," when those "other reasons" are not specified, provides no support for the ALJ's adverse credibility finding. The ALJ also supports his conclusion regarding plaintiff's credibility determination with his characterization of the medical evidence as "relatively weak" (Tr. 627). The Court already has determined that the ALJ did not evaluate properly the medical evidence. See supra section 1. Therefore, this improper evaluation of the medical evidence cannot support an adverse credibility finding.

REPORT AND RECOMMENDATION - 17

1   Finally, the ALJ supports his credibility determination regarding daily activities with the
2   conclusion that "the record reflects that [plaintiff] has engaged in daily activities that are not
3   limited to the extent one would expect, given the complaints of disabling symptoms and
4   limitation" (Tr. 627). In support of this conclusion, the ALJ cites examples of plaintiff's physical
5   abilities ("she can care for herself without assistance, prepare simple meals, perform light
6   housework, shop for groceries and household items in stores and online, and drive an
7   automobile") (id.). The ALJ also relies for this conclusion on the fact that plaintiff "has worked
8   extensively with a vocational rehabilitation counselor since August 2003," and that she
9   "prepared 'an incredibly detailed business plan'" (id.). First, the ALJ fails to mention that
10  plaintiff was unsuccessful in implementing her "'incredibly detailed business plan,'" because
11  "her primary barrier persists in being unable to interact with people to the extent needed to
12  succeed with her business" (Tr. 428). The ALJ also fails to mention that plaintiff's vocational
13  rehabilitation counselor concluded that "[a]s her vocational counselor, I am concerned that her
14  ability to work competitively is extremely limited" (id.). The Court also notes that according to
15  the Ninth Circuit Court of Appeals, "[i]t does not follow from the fact that a claimant tried to
16  work for a short period of time and, because of h[er] impairments, *failed*, that [s]he did not then
17  experience [symptoms] and limitations severe enough to preclude h[er] from *maintaining*
18  substantial gainful employment." Lingenfelter v. Astrue, 504 F.3d 1028, 1038 (9th Cir. 2007)
19  (emphases in original).
20
21          In addition, none of the daily activities listed by the ALJ demonstrate that plaintiff can
22  interact appropriately with others in a work environment outside of her home, and none of these
23  daily activities negate plaintiff's alleged symptoms and limitations due to her major depression,
24  anxiety and personality disorder. "[A]bsent affirmative evidence that [plaintiff] is malingering,

the ALJ must provide 'clear and convincing' reasons for rejecting the claimant's testimony. Smolen, supra, 80 F.3d at 1283-84. For all of the reasons discussed, and based on a review of the relevant record, the Court concludes that the ALJ here has failed to provide 'clear and convincing' reasons in support of his rejection of plaintiff's testimony. See id.

4. The ALJ should reevaluate whether or not plaintiff's sleep apnea and torn rotator cuff were severe impairments and should reevaluate all of plaintiff's functional limitations.

The Court already has determined that the ALJ failed to evaluate properly the medical evidence and plaintiff's testimony. See supra sections 1 and 3. Following a proper review of the medical evidence and plaintiff's testimony, the ALJ may make a different determination regarding whether or not plaintiff's sleep apnea and torn rotator cuff were severe impairments, and regarding plaintiff's functional limitations. Therefore, on remand, the ALJ should reevaluate this issue.

5. The ALJ should reconsider whether or not plaintiff met or equaled the B and C criteria in Listings 12.04 and/or 12.06 and/or 12.08.

In making his determination that plaintiff's "impairments or the combination of impairments do not meet or medically equal the criteria set forth for any impairment in the listings," the ALJ concluded that plaintiff suffered only "moderate difficulties in maintaining social functioning" (Tr. 623). Dr. Schneider opined that individual with profiles similar to plaintiff's "tend to withdraw and avoid social contact" (Tr. 161). Dr. Schneider's opinion is consistent with a finding that plaintiff's difficulties in maintaining social functioning are at a level of severity greater than moderate (see Tr. 154-64). In addition, the Court already has concluded that the ALJ's evaluation of Dr. Schneider's medical opinion was not proper. See supra section 1. Therefore, on remand, following a proper review of the medical evidence and of

plaintiff's testimony, the ALJ may reach a different conclusion regarding this issue. For these reasons, if the ALJ reaches this step in the sequential disability evaluation, the ALJ should reconsider this issue.

     6.   The ALJ should reassess plaintiff's residual functional capacity.

     Similarly, if the ALJ reaches this step in the sequential disability evaluation, the ALJ will need to reassess plaintiff's residual functional capacity following a proper evaluation of the medical evidence and of plaintiff's testimony.

     7.   The issue of whether or not plaintiff is capable of performing her past relevant work should be reevaluated.

     As already discussed, see supra p. 13, the ALJ adopted the opinion from the vocational expert that plaintiff's residual functional capacity is such that she is capable of her previous work as a home care attendant (Tr. 631-32). However, plaintiff alleges that even working in the home as a home care attendant was "difficult for [her] to deal with" and resulted in suicidal feelings (Tr. 603). In addition, the Court already has determined that the ALJ conducted an improper evaluation of plaintiff's credibility and testimony. See supra section 3. Therefore, if the ALJ reaches this step in the sequential disability evaluation, the ALJ will need to reassess whether or not plaintiff is capable of performing her past relevant work, following a proper evaluation of the medical evidence and plaintiff's testimony.

     8.   This case should not be remanded for a direct award of benefits.

     The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate where:

     (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a

determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, supra, 211 F.3d at 1178 (*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved as the record contains contradictions. Furthermore, for this reason, it is not clear from the record that the ALJ would be required to find plaintiff disabled if the improperly rejected evidence was credited.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick, supra, 157 F.3d at 722; Andrews, supra, 53 F.3d at 1043. If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Administration the opportunity to consider properly the medical evidence, plaintiff's testimony and the record as a whole. Remanding the matter will allow the Administration the opportunity to reconsider its decisions at steps two through five of the sequential disability evaluation.

## CONCLUSION

The ALJ failed to evaluate properly the medical evidence and plaintiff's testimony. Therefore, this matter should be reversed and remanded. On remand, because of these errors, the ALJ should begin the sequential disability evaluation at step two.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P.

1    6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

2    review by the district judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

3    imposed by Rule 72(b), the clerk is directed to set the matter for consideration on May 6, 2011**,**

4    as noted in the caption.

5              Dated this 12th day of April, 2011.

6

7

8

9                                                        _____

10                                                       J. Richard Creatura
                                                         United States Magistrate Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 22